FILED
2011 Nov-03  PM 03:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

|  |  |
|---|---|
| **STEVEN RUDOLPH and WENDY RUDOLPH,**<br><br>      **Plaintiffs,**<br><br>   **vs.**<br><br>**AMERICA'S WHOLESALE LENDER; BANK OF AMERICA, N.A.; BAC HOME LOANS SERVICING, LP; RESERVE MORTGAGE INVESTMENTS, LLC; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.; CWABS, INC., ASSET-BACKED CERTIFICATES SERIES 2007–9; COUNTRYWIDE HOME LOANS, INC.; and A through R,**<br><br>      **Defendants.** | **CIVIL ACTION FILE NO. 2–2011–cv–03750**<br><br>Removed from the Circuit Court of Jefferson County, Alabama Case No. CV–2011–900542.00 |

## MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Bank of America, N.A., individually and as successor by merger to BAC Home Loans Servicing, LP,[1] Mortgage Electronic Registration Systems, Inc., The Bank of New York Mellon Trust Company, N.A., CWABS, Inc., and Countrywide Home Loans, Inc.[2] (collectively, "Defendants"), by and through their undersigned counsel, hereby request that this Court dismiss Plaintiffs' Complaint. In support of this Motion, Defendants state as follows:

---

[1] BAC Home Loans Servicing, LP was merged into Bank of America, N.A. on July 1, 2011.
[2] As Plaintiffs correctly note in their complaint, "America's Wholesale Lender" is a trade name for Countrywide Home Loans, Inc.

{BH105123.1}

## I.   ALLEGATIONS

Plaintiffs Steven Rudolph and Wendy Rudolph (collectively, the "Rudolphs") allege that, in May 2007, they obtained a mortgage loan from Defendant Countrywide Home Loans, Inc. to purchase the property located at 724 28th Court South, Bessemer, Alabama (the "Property"). (Compl. ¶¶ 10, 11.)  After Wendy Rudolph lost her job, the Rudolphs contacted Defendant BAC Home Loans Servicing, LP (collectively with Bank of America, N.A., "Bank of America") regarding a modification of their mortgage loan.  (Compl. ¶ 14.)  Although the Rudolphs explained that they wanted assistance before they fell behind on their mortgage payments, Bank of America allegedly informed them that they would not be eligible for a loan modification until they were at least three months behind.  (Compl. ¶¶ 15, 16.)

After falling three months behind on their mortgage payments, the Rudolphs contacted Bank of America again regarding a modification of their mortgage loan, and in September 2009, Bank of America sent a letter to the Rudolphs informing them that they were eligible for one of three different types of loan modifications.  (Compl. ¶¶ 17, 18.)  In the following months, the Rudolphs worked with Bank of America to process their application for a loan modification. (Compl. ¶¶ 20–21.)  Nonetheless, when Wendy Rudolph later regained her employment, the Rudolphs began making payments on their mortgage again.  (Compl. ¶ 21.)  Bank of America returned the payments, however, and on August 11, 2011, the Rudolphs were notified that the Property was scheduled for foreclosure sale on September 14, 2011.  (Compl. ¶¶ 21, 22.)

On these allegations, the Rudolphs assert claims for:  (1) negligence/wantonness/willfulness; (2) wrongful foreclosure; (3) slander of title/trespass; (4) misrepresentation/fraud; (5) "outrageous misconduct;" (6) "violations of deceptive trade practices and other federal laws;" and (7) breach of contract.  (*See* Compl. ¶¶ 23–65.)

## II.      STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted."  In ruling on a motion to dismiss, all of the well-pleaded factual allegations in a plaintiff's complaint must be accepted as true and construed in the light most favorable to the plaintiff, *Young Apartments, Inc. v. Town of Jupiter, Fla.*, 529 F.3d 1027, 1037 (11th Cir. 2008); however, "unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal," *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U, S. 544, 555 (2007) (citations and quotations omitted).  More specifically, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotation omitted).  Thus, to survive a Rule 12(b)(6) motion, "the plaintiff's factual allegations, when assumed to be true, 'must be enough to raise a right to relief above the speculative level.'" *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).

## III.     ARGUMENT

### A.       The Rudolphs have not stated a claim for negligence/wantonness/willfulness.

The Rudolphs' claim for negligence/wantonness/willfulness is merely a breach of contract claim recast as a tort claim, and the Rudolphs have not alleged any duty owed to them by Defendants independent of their mortgage loan agreements.

Under Alabama law, "proof of negligence requires the establishment of a duty and a breach thereof that proximately caused damage to the plaintiff." *George v. Ala. Power Co.*, 12 So. 3d 360, 365 (Ala. 2008). Despite these clear requirements, however, the Rudolphs have failed to plead any relationship with Defendants other than the normal debtor-creditor relationship. In doing so, the Rudolphs have failed to allege any duty owed to them by Defendants independent of the Rudolphs' mortgage loan agreements. Courts have routinely held that a "financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Sheets v. DHI Mortgage Company, Ltd. et al.*, 2009 U.S Dist. LEXIS 68780, *9 (E.D. Ca. July 20, 2009) (quoting *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1096 (1991). Indeed, Alabama recognizes that "the mere lending of money on a house by a financial institution . . . does not create a confidential relationship, or other circumstances imposing a duty to disclose information at the lender's disposal." *Swann v. Regions Bank*, 17 So. 3d 1180, 1190 (Ala. Civ. App. 2008) (emphasis added) (quoting *Lee v. United Federal Savings & Loan Ass'n*, 466 So. 2d 131 (Ala. 1985)). In fact, "[c]ourts have traditionally viewed the relationship between a bank and its customers as a creditor-debtor relationship which does not impose a fiduciary duty of disclosure on the bank." *Id*. (quoting *Baylor v. Jordan*, 445 So. 2d 254, 256 (Ala. 1984)); *see also Flying J Fish Farm v. Peoples Bank of Greenboro*, 12 So. 3d 1185, 1190-91 (Ala. 2008) (stating "[c]ourts have traditionally viewed the relationship between a bank and its customer as a creditor-debtor relationship that does not impose a fiduciary duty on the bank"). Since the Rudolphs have not alleged any relationship with Defendants other than the normal debtor-creditor relationship, the Rudolphs have not

alleged any common-law tort duty – much less the breach of any such duty – and the Court may dismiss the Rudolphs' negligence/wantonness/willfulness claim on this basis alone.

Additionally, the general rule in Alabama is that a mere failure to perform a contractual obligation will not sustain an action in tort. *See Temploy Inc. v. Companion Prop. & Cas. Ins. Co.*, No. 07–632–KD–C, 2008 U.S. Dist. LEXIS 78572 (S.D. Ala. Oct. 6, 2008) (dismissing plaintiff's claims for negligence and wantonness where those claims were "rooted in duties or obligations which arose between [the parties] pursuant to the contract they executed" and thus were "simply breach of contract claims recast as tort claims"); *Sabir v. ADT Security Servs., Inc.*, No. 2:07cv1055–MEF, 2008 U.S. Dist LEXIS 35270 (M.D. Ala. Apr. 30, 2008) (granting defendant's motion for judgment on the pleadings and holding that where the only obligations owed by company that installed security system to owner of jewelry store arose out of the contract between them, owner's claims for negligence and wantonness based on allegations that company failed to properly maintain or install security system were due to be dismissed); *Porterfield v. Flowers Baking Co. of Opelika, L.L.C.*, No 2:05–cv–937–MEF, 2008 U.S. Dist. LEXIS 92257 (M.D. Ala. Dec. 12, 2007) (granting summary judgment to defendant on plaintiff's negligence and wantonness claims where allegations of a violation of a contractual duty served as the basis for those claims); *Barber v. Bus. Prods. Ctr, Inc.*, 677 So. 2d 223, 228 (Ala. 1996), *overruled on other grounds by White Sands Group, L.L.C. v. PRS II, LLC,* 32 So. 3d 5, 14 (Ala. 2009); *Wright v. Sears, Roebuck & Co.*, 355 So. 2d 353 (Ala. 1978) (finding that plaintiff's suit alleging that defendant negligently failed to properly perform contract to install a heating unit, which resulted in a fire in plaintiff's home, sounded in contract rather than tort); *Hamner v. Mutual. of Omaha Ins. Co.*, 270 So. 2d 87 (Ala. Civ. App. 1972) (affirming trial court's decision to sustain demurrer on count two of plaintiff's complaint which attempted to allege an action in

tort arising out of a breach of a promise in a policy of insurance).  Thus, even if Defendants – rather than the Rudolphs – had somehow failed to fulfill their obligations under the Rudolphs' mortgage loan agreements, these facts still would not sustain the Rudolphs' negligence/wantonness/willfulness claim, and the Court may also dismiss the claim on that basis.

      B.      <u>The Rudolphs have not stated a claim for wrongful foreclosure.</u>

The "elements" that Alabama Courts consider to determine whether a plaintiff may prosecute an action for wrongful foreclosure are: (1) the actions of the mortgagee were either outside the boundaries of the foreclosure or taken for some purpose other than to secure the debt owed by the mortgagor; (2) the actions of the mortgagee were for some ulterior motive; (3) the power of sale was perverted or used for the mortgagee's or someone else's purpose; or (4) the mortgagee had an ill motive. *See In re Sharpe*, 391 B.R. 117, 152–53 (Bankr. N.D. Ala.  2008). Moreover, under Alabama law, "if an action by a mortgagee was for the purpose of securing the debt owed by the mortgagor, while it may be wrong for other reasons, it cannot, unless some other malady exists, be wrongful foreclosure." *Id.* at 153.

Here, the Rudolphs cannot state a claim for wrongful foreclosure primarily because they have not alleged that Defendants actually foreclosed the mortgage.  (*See* Compl.)  It is axiomatic that a claim for wrongful foreclosure requires an actual foreclosure.  *See Hardy v. Jim Walters Homes, Inc.*, No. 06–0687–WS–B, 2007 U.S. Dist. LEXIS 5253, *18–* 20 (S.D. Ala. Jan. 18, 2007) ("Plaintiffs have cited no Alabama authority, and the undersigned has found none, under which the mere scheduling of a foreclosure sale, without more, has been found to constitute a mortgagee's exercise of the power of sale. A plain reading of that legal standard strongly suggests that it cannot, and that the power of sale is exercised by selling, not merely by running a newspaper advertisement preparatory to selling."); *see also McKinley v. Lamar Bank*, 919 So.2d

918, 930 (Miss. 2005) ("There was no wrongful foreclosure because there was never a foreclosure at all."). Accordingly, while the Rudolphs have alleged that Defendants scheduled a foreclosure sale, (*see* Comp. ¶ 22), they have not alleged that the Property was actually sold and, therefore, have not stated a claim for wrongful foreclosure.

Even if Defendants had foreclosed the Property, however, the Rudolphs – who specifically allege that they stopped making payments on their mortgage loan – cite absolutely no facts in support of their legal conclusion that Defendants were not entitled to initiate foreclosure proceedings. (*See* Compl.) Likewise, the Rudolphs' Complaint contains no factual allegations showing that: (1) Defendants' alleged actions were for any purpose but to secure the Rudolphs' debt; (2) Defendants actions were for some ulterior motive; (3) the power of sale was perverted; or (4) Defendants had an ill motive. (*See* Compl. ¶¶ 27–30.) Without these factual allegations, the Rudolphs cannot state a claim for wrongful foreclosure, and the Court may also dismiss the Rudolphs wrongful foreclosure claim on this basis.

Finally, to the extent the Rudolphs assert that there is some defect regarding the assignment of their note and mortgage that would prevent Defendants from foreclosing the Property, (*see, e.g.*, Compl. ¶¶ 30), their legal conclusions on this point are completely unsupported by factual allegations. It is undisputed that Defendant Countrywide Home Loans, Inc. originated the Rudolphs' mortgage loan and that Bank of America services it. (*See* Compl. 11, 14). Moreover, Alabama law does not require a foreclosing entity to demonstrate ownership of a promissory note before taking action on the corresponding mortgage. *See Farkas v. SunTrust Mortgage, Inc*, No.10–0512–GC–M, 2010 U.S. Dist. LEXIS 138803, *11–12 (S.D. Ala. Dec. 15, 2010). Accordingly, this Court should entirely disregard the Rudolphs' conclusory

allegations regarding assignment of their note and mortgage and dismiss the Rudolphs' wrongful foreclosure claim.

    C.    <u>The Rudolphs have not stated a claim for slander of title or trespass.</u>[3]

The elements constituting slander of title as a basis for the recovery of damages are: (1) ownership of the property by plaintiff; (2) falsity of the words published; (3) malice of defendant in publishing the false statements; (4) publication to some person other than the owner; (5) the publication must be in disparagement of plaintiff's property or the title thereof; and (6) that special damages were the proximate result of such publication.  *Womack v. McDonald*, 121 So. 57 (Ala. 1929).

Here, the Rudolphs have not alleged that Defendants actions were for any purpose but to secure the Rudolphs' debt, (*see* Compl. ¶¶ 31–35), and thus, the Rudolphs have not alleged the malice required to support a slander of title claim.  Likewise, the Rudolphs have not alleged any special damages resulting from the alleged slander of title.  (*See* Compl. ¶¶31–35.)  Finally, counsel has not located any authority supporting the Rudolphs' proposition that "fail[ure] to remove a lien . . . after being requested to do so," (Compl. ¶ 32), can form the basis of either a slander of title or trespass claim, and analogous Alabama authority suggests that it cannot.  *See Folmar v. Empire Fire & Marine Ins. Co.*, 856 So. 2d 807, 811 (2003) ("The filing of the lien may (or may not) have been a false statement, but it was done without malice, while the refusal to remove the lien may (or may not) have been a malicious act, but it was in no way a false statement.  Neither act, however, constitutes slander of title because the statement at issue in a

---

[3]  It is unclear what the Rudolphs' seemingly separate claims for trespass and slander of title have to do with each other; however, they constitute a single count in the Rudolphs' complaint.  Moreover, the Rudolphs' trespass claim is supported by only the conclusory allegation that "Defendants, by [their] actions, did willfully trespass onto Mr. and Mrs. Rudolph's property."  (Compl. ¶ 32.)  No factual allegations support or explain this legal conclusion, and the Court may dismiss the Rudolphs' "trespass" claim – to the extent it is asserted separately from the slander of title claim – on this basis.  *See Marsh*, 268 F.3d at 1036 n.16 ("[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal.").

slander-of-title action must be 'libelous or slanderous words falsely <u>and</u> maliciously impugning title.'" (emphasis in original) (quotations omitted)).  In fact, the Rudolphs' conclusory allegation that "Defendants' had no interest in [their] property," (Compl. ¶ 34), is demonstrably false and contradicted by the allegations in which the Rudolphs' admit – as they must – that Bank of America holds an unsatisfied mortgage on the Property, (*see generally* Compl.).[4]  For that reason, any alleged failure to "remove the lien" or title interest created by the mortgage is not actionable and does not constitute slander of title.  Accordingly, the Rudolphs have not stated a claim for either slander of title or trespass, and the Court should therefore dismiss their slander of title and trespass claims in their entirety.

       D.    <u>The Rudolphs have not stated a claim for fraud.</u>

       1.    *The Rudolphs have not alleged fraud with particularity.*

In the Eleventh Circuit, a plaintiff alleging fraud must "identify (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and persons responsible for the statement; (3) the content and manner in which the statements misled plaintiff; and (4) what the Defendants gains [sic] by the alleged fraud." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 Fed. Appx. 81, 86 (11th Cir. 2008).  In addition, Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." F. R. Civ. P. 9(b); *see also* Ala. R. Civ. P 9(b) ("[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity").  The "'particularity' requirement 'serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of

---

[4]  *See. e.g., Trauner v. Lowery*, 369 So. 2d 531, 534 (Ala. 1979) (stating that Alabama is a "title" state in which a mortgage "passes legal title to the mortgagee").

immoral and fraudulent behavior." *W. Coast Roofing*, 287 Fed. Appx. at 86 (quoting *Ziemba v. Cascade Intern, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)).

Here, the Rudolphs have not alleged <u>any</u> misrepresentation by Defendants.  To the extent the Rudolphs base their fraud claim on allegations that Defendants represented that "they wanted to work with [the Rudolphs] to help them keep their home" and "would modify [the Rudolphs' mortgage] loan through a modification agreement," (see Compl. ¶¶ 37, 41, 42–44), the Rudolphs have not alleged that Defendants lacked an intention to modify their mortgage loan at the time of the alleged representations.  *See Graham Foods, Inc. v. First. Ala. Bank*, 567 So. 2d 859, 861 (Ala. 1990) ("Because fraud requires a misrepresentation of a material existing fact, an action for promissory fraud requires proof of the promisor's intent at the time of making the representation not to perform the act promised, that is, proof that he had a present intent to deceive.").  Moreover, with regard to Defendants Mortgage Electronic Registration Systems, Inc., The Bank of New York Mellon Trust Company, N.A., CWABS, Inc., and Countrywide Home Loans, Inc., the Rudolphs have not alleged any representations at all.  Accordingly, to the extent the Rudolphs base their fraud claim on allegations regarding an alleged agreement to modify their mortgage loan, their allegations are insufficient for even a "short and plain statement" under Rule 8 of the Federal Rules of Civil Procedure.

In any event, the Rudolphs have failed to allege time, place, and manner of any alleged representation or to identify what Defendants hoped to obtain through their alleged representations.  Thus, even if the Rudolphs satisfied the requirements of Rule 8 – which they have not – then they still have not satisfied the heightened pleading requirement imposed by Rule 9(b).  As a result, the Rudolphs have not stated a claim for fraud, and the Court may dismiss their fraud claim on this basis alone.

2.      *The Rudolphs' fraud claim is barred by the Alabama Statute of Frauds.*

As discussed in more detail below, the Alabama Statute of Frauds requires that any agreement to modify the Rudolphs' mortgage loan be memorialized in a writing "subscribed by the party to be charged therewith." *See* Ala. Code § 8–9–2(7); *see also Land Ventures For 2, LLC v. Farm Credit of Nw. Fla., ACA*, Bankr. No. 10–30651–WRS, Adv. Proc. No. 10–03048–WRS, 2010 Bankr. LEXIS (M.D. Ala. Bankr. Nov. 12, 2010) (dismissing breach of contract claim bases on alleged oral agreement to modify mortgage loan); *Cammorata v. Woodruff*, 445 So. 2d 867, 872 (Ala. 1983) ("The general rule is that a contract required by the statute of frauds to be in writing cannot be modified by subsequent oral agreement.").  Moreover, when a tort claim, such a fraud, "turns on the existence of an alleged agreement that cannot, consistent with the Statute of Frauds, be proved to support a breach-of-contract claim, the Statute of Frauds also bars proof of that agreement to support the tort claim."  *Holman v. Childersburg Bancorporation, Inc.*, 852 So.2d 691, 701 (Ala. 2002).  In other words, "if the proof of a promise or contract, void under the statute of frauds, is essential to maintain the action, there may be no recovery."  *Id.* at 699.

In *Holman*, the plaintiffs sued a bank for breach of contract and negligence for violating an alleged verbal promise to release a mortgage, a promise upon which the plaintiffs allegedly based a decision to close on a separate construction loan with the bank.  *Id.* at 696, 700.  The Alabama Supreme Court held that: (1) the bank's alleged verbal promise to release the mortgage failed to meet the Statute of Frauds; (2) plaintiffs' recovery – whether in contract or tort – turned on the existence of the alleged verbal promise, and (3) that proof of that promise was barred by the Statute of Frauds.  *Id.* at 700.  The Court further held that the alleged promise could not be enforced in contract or by an action in tort because there was no writing stating the terms of the

alleged promise or the consideration being given in exchange for that promise.  Accordingly, the Court concluded that the Statute of Frauds was not satisfied and all of the plaintiffs' claims against the bank were barred.  *Id.*[5]

Here, the Rudolphs' fraud claim turns entirely on an alleged verbal agreement to modify their mortgage loan.  (*See* Compl. ¶¶ 36–46).  Any such agreement is unenforceable under the Alabama Statute of Frauds, however, and therefore cannot form the basis for a fraud claim.  Thus, even if the Rudolphs had stated a fraud claim with particularity – which they have not – their claim would still be barred by the Alabama Statute of Frauds and subject to dismissal on that basis.[6]

     E.     The Rudolph have not stated a claim for "outrageous misconduct".

Recovery for intentional infliction of emotional distress is allowed "only in the most egregious circumstances."  *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1044 (Ala. 1993).  Further, to demonstrate egregious conduct, a plaintiff must show that the defendant's conduct "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it."  *Id*. at 1043 (citing *American Road Serv. Co. v. Inmon*, 394 So. 2d 361 (Ala. 1981)) ("[B]y extreme, we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.").  Consequently, Alabama courts have restricted recovery for a claim of intentional infliction of emotional distress to three limited circumstances:  (1) wrongful conduct in the

---

[5] *See also Armstrong Business Services, Inc. v. AmSouth Bank*, 817 So.2d 665, 670 (Ala. 2001) (Statute of Frauds barred the plaintiff's fraud and contract claims against bank, where alleged loan "commitment" letter was either verbal, lacked consideration, or both.); *Bruce v. Cole*, 854 So.2d 47, 58 (Ala. 2003) (holding that "an oral promise that is void by operation of the Statute of Frauds will not support an action against the promisor for promissory fraud.").

[6] The Rudolphs' negligence/wantonness/willfulness claim is also subject to dismissal on this basis to the extent it is based on an alleged verbal agreement to modify the Rudolphs' mortgage loan.

context of family burials; (2) insurance agents who employed unjust means to coerce the insured into settling an insurance claim; and (3) egregious sexual harassment. *Thomas*, 624 So. 2d at 1044.

The Rudolphs "outrageous misconduct" claim does not implicate any of these circumstances. (*See* Compl. ¶¶ 47–52.)  Rather, the Rudolphs' "outrageous misconduct" claim is simply a combination of allegations related to the Rudolphs' wrongful foreclosure and fraud claims.   As discussed above, the Rudolphs have not stated a claim for either wrongful foreclosure or fraud, and even if they had, they still would not be able to state a claim for "outrageous misconduct" or intentional infliction of emotional distress.   *See State Farm Automobile Insurance Co. v. Morris*, 612 So. 2d 440, 445 (Ala. 1993) (stating that plaintiffs cannot recover for sleeplessness and concerns about one's financial condition).  Accordingly, the Court should also dismiss the Rudolphs' "outrageous misconduct" claim.

F.      The Rudolph have not stated a claim for deceptive trade practices.

In support of their claim for "violations of deceptive trade practices and other federal laws," the Rudolphs merely string together a series of legal conclusions regarding Defendants' authority to foreclose the Property and the assignment of their mortgage loan. (*See* Compl. ¶¶ 53–60.)  The Rudolphs' rank speculation and unsupported legal conclusions cannot support a claim under the Home Affordable Modification Program, Real Estate Settlement Procedures Act, Alabama Deceptive Trade Practices Act, or any other state or federal law, *see Marsh*, 268 F.3d at 1036 n.16 ("Unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal."); *see also United Techs. Corp.*, 556 F.3d at 1270 (11th Cir. 2009) (stating that, to survive a Rule 12(b)(6) motion, "the plaintiff's factual allegations, when assumed to be true, 'must be enough to raise a right to relief above the speculative level.'"

(quoting *Twombly*, 550 U.S. at 555)), and the Court may dismiss the Rudolphs "violations of deceptive trade practices and other federal laws" claim on this basis.

Moreover, to the extent the Rudolphs' "violations of deceptive trade practices and other federal laws" claim is an attempt to state a claim under the Alabama Deceptive Trade Practices Act, it is precluded by the fact that the statute does not apply to either banking institutions or claims arising our of mortgage loans. *See* Ala. Code § 8–19–7 ("Nothing in this chapter shall apply to . . . any bank or affiliate of a bank which is regulated by the State Banking Department of Alabama, the Comptroller of the Currency of the United States, Federal Deposit Insurance Corporation or the Board of Governors of the Federal Reserve System."); *Deerman v. Fed. Home Loan Mortgage Corp.*, 955 F. Supp. 1393, 1399 (N.D. Ala. 1997) ("The court is of the opinion, therefore, that a mortgage loan is not a good or service under the Alabama [Deceptive Trade Practices Act]. As a result, the [plaintiffs] do not fall within the definition of consumer under the statute with respect to their mortgage, and they do not have a private right of action under this statute.").

It is likewise precluded by the fact that the Rudolphs have not alleged any facts showing that they complied with the Alabama Deceptive Trade Practices Act's pre-filing demand requirement. (*See* Compl.) The Alabama Deceptive Trade Practices Act provides that "at least 15 days prior to the filing of any action under this section," a prospective plaintiff must file a "written demand" for relief that "reasonably describes the unfair or deceptive act or practice relied upon and the injury suffered." Ala. Code § 8–19–10(e). Accordingly, the Rudolphs failure to allege facts showing that they reasonably described the unfair or deceptive practices to Defendants in a timely letter is also fatal to their claim under the Alabama Deceptive Trade Practices Act. *See Givens v. Rent-A-Center, Inc.*, 720 F. Supp. 160, 162 (S.D. Ala. 1988).

G.     The Rudolphs have not stated a claim for breach of contract.

To establish a prima facie case for breach-of-contract, a plaintiff must allege and show "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Southern Med. Health Sys., Inc. v. Vaughn*, 669  So. 2d 98, 99 (Ala. 1995).  Furthermore, a plaintiff's broad allegations that a defendant is acting in bad faith will not support a breach of contract claim. *Parsons & Whittemore Enters. Corp. v. Cello Energy, LLC*, 613 F. Supp. 2d 1272 (S.D. Ala. 2009).  The Rudolphs – in addition to admitting their own default – have not pointed to any provision of their mortgage loan agreements that was violated by Defendants. (*See* Compl. ¶¶ 9, 21–24.)  This fact alone provides the Court with sufficient basis to dismiss the Rudolphs' breach of contract claim.

Moreover, to the extent the Rudolphs attempt to allege violation of a verbal agreement to modify their mortgage loan, their claim is barred by the Alabama statute of frauds.  Under the statute, "[e]very agreement or commitment to lend money, delay or forebear repayment thereof or to modify the provisions of such an agreement or commitment" must be in writing and "subscribed by the party to be charged therewith."  Ala. Code § 8–9–2 (emphasis added).  The Rudolphs, however, have only alleged that they were *eligible* for one of three loan modification options.  (*See* Compl. ¶ 18.)  They have not alleged the existence of a written loan modification agreement or based any of claims upon such a writing.  (*See* Compl.)  The Alabama statute of frauds requires any agreement modifying the terms of a mortgage loan to be in writing.  *See* Ala. Code § 8–9–2(7); *see also Land Ventures For 2, LLC v. Farm Credit of Nw. Fla., ACA*, Bankr. No. 10–30651–WRS, Adv. Proc. No. 10–03048–WRS, 2010 Bankr. LEXIS (M.D. Ala. Bankr. Nov. 12, 2010) (dismissing breach of contract claim bases on alleged oral agreement to modify

mortgage loan); *Rudolph v. Harris*, 622 So. 2d 880 (Ala. 1992) (holding that stock sale agreement could not be modified orally); *Cammorata v. Woodruff*, 445 So. 2d 867, 872 (Ala. 1983) ("The general rule is that a contract required by the statute of frauds to be in writing cannot be modified by subsequent oral agreement."). Accordingly, the Rudolphs cannot base their breach of contract claim on an alleged verbal agreement to modify their mortgage loan, and the Court may also dismiss their breach of contract claim on that basis.

H.    The Rudolphs' claims should be dismissed to the extent they are based on alleged violations of HAMP guidelines.

Home Affordable Modification Program is a government program established pursuant to the Emergency Economic Stabilization Act of 2008, Pub. L. 110–343; *Villa v. Wells Fargo Bank, N.A.*, No. 10CV81–DMS (WVG), 2010 U.S. Dist. LEXIS 23741, *1 (S.D. Cal. Mar. 15, 2010), and designed to promote loan modification and other foreclosure prevention services, *id.* Under HAMP, mortgage loan servicers enter into an agreement with the Department of Treasury whereby the servicers agree to perform loan modification and foreclosure prevention services in exchange for incentives provided by the Department. *Winn v. Chase Mortgage Servs.*, No. 2:10cv395, 2010 U.S. Dist. LEXIS 143041, *6–7 (E.D. Va. Oct. 29, 2010). Borrowers can apply for a modification of their mortgage loan under the program and, if they qualify, the mortgage loan servicer provides the borrowers with loan modification or foreclosure prevention services. *Id.* Accordingly, like most federal assistance programs, if the loan servicer does not comply with HAMP guidelines, then the federal government may revoke the servicer's right to participate in the program. An aggrieved borrower or member of the public, however, has no private right of action to assert claims for a mortgage loan servicer's alleged violation of program guidelines. *See Villa*, 2010 U.S. Dist. LEXIS 23741 at *6 (dismissing plaintiff's HAMP claims and stating that "[i]t is difficult to demonstrate third-party beneficiary status in the context of government

contract. Because government contracts often benefit the public, parties generally are assumed to be incidental beneficiaries . . . the language of the [HAMP] contract fail[s] to demonstrate that the parties intended to grant enforceable rights under the contract to borrowers").

In lieu of creating a private right of action, the federal government expressly delegated Federal Home Loan Mortgage Corporation as the exclusive HAMP compliance authority. *Marks v. Bank of Am., N.A.*, No. 3:10–cv–08039–PHX–JAT, 2010 U.S. Dist. LEXIS 61489, * 15–16 (D. Ariz. June 21, 2010) ("By delegating compliance authority to one entity, Freddie Mac, Congress intended that a private cause of action was not permitted.") (citing *Reyes-Goona v. N.C. Growers Ass'n*, 250 F.3d 861, 865 (4th Cir. 2001)). "[I]n specifically providing for private actions against the Secretary of the Treasury but not against others, Congress demonstrated that it 'did not intend to create a private right of action for violation of HAMP against lenders that received HAMP funds.'" *Vida v. OneWest Bank, F.S.B.*, No. 10–987–AC, 2010 U.S. Dist. LEXIS 132000, *9 (D. Or. Dec. 13, 2010) (dismissing breach of HAMP claim).[7]

---

[7] Many other jurisdictions have addressed the issue of whether there is a private right of action under HAMP, and nearly all have come to the conclusion that there is not a private right of action. *See, e.g.*, *Ogbon v. Benefit Credit Servs.*, 2011 U.S. Dist. LEXIS 74620 (S.D.N.Y. July 8, 2011); *Brisbin v. Aurora Loan Servs.*, LLC, 2011 U.S. Dist. LEXIS 46925 (D. Minn. May 2, 2011); *Nafso v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 44654 (E.D. Mich. April 26, 2011); *KeyBank, N.A. v. Bingo*, 2011 U.S. Dist. LEXIS 43812 (W.D. Wash. Apr. 22, 2011); *Sena v. Bank of Am. Home Loans*, 2011 U.S. Dist. LEXIS 33959 (D. Nev. Mar. 29, 2011); *Cohn v. Bank of Am.*, 2011 U.S. Dist. LEXIS 3076 (E.D. Cal. Jan. 12, 2011); *Speleos v. BAC Home Loans Servicing, LP*, 755 F. Supp. 2d 304 (D. Mass. Dec.14, 2010); *Zoher v. Chase Home Financing*, 2010 U.S. Dist. LEXIS 109936 (S.D. Fla. Oct. 15, 2010); *Shirk v. JPMorgan Chase Bank, N.A. (In re Shirk)*, 437 B.R. 592 (Bankr. S.D. Ohio 2010); *Hart v. Countrywide Home Loans, Inc.*, 735 F. Supp. 2d 741, 748 (E.D. Mich. Aug. 9, 2010); *Hoffman v. Bank of Am.*, 2010 U.S. Dist. LEXIS 70455 (N.D. Cal. June 30, 2010); *Simon v. Bank of Am., N.A.*, 2010 U.S. Dist. LEXIS 63480 (D. Nev. June 23, 2010); *Zendejas v. GMAC Wholesale Mortgage Corp.*, 2010 U.S. Dist. LEXIS 59793 (E.D. Cal. Jun. 16, 2010); *Burtzos v. Countrywide Home Loans*, 2010 U.S. Dist. LEXIS 53509 (S.D. Cal. Jun. 1, 2010); *Benito v. Indymac Mortgage*, 2010 U.S. Dist. LEXIS 51259 (D. Nev. May 21, 2010); *Berenice Thoreau de la Salle v. America's Wholesale Lender*, 2010 U.S. LEXIS 36319 (E.D. Cal. Apr. 13, 2010); *Villa v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 23741 (S.D. Cal. Mar. 15, 2010); *Kravich v. Wells Fargo Home Mortgage*, 2010 U.S. Dist. LEXIS 12067 (E.D. Cal. Feb. 11, 2010); *Gardner v. Am. Home Mortgage Servicing, Inc.*, 691 F. Supp.2d 1192 (E.D. Cal. 2010); *Aleem v. Bank of Am.*, 2010 U.S. Dist. LEXIS 11944 (C.D. Cal. Feb. 9, 2010); *Escobedo v. Countrywide Home Loans, Inc.*, 2009 U.S. Dist. LEXIS 117017 (S.D. Cal. Dec. 15, 2009); *Santos v. Countrywide Home Loans*, 2009 U.S. Dist. LEXIS 103453 (E.D. Cal. Nov. 5, 2009); *Oliver v. Countrywide Home Loans, Inc.*, 2009 U.S. Dist. LEXIS 94913 (E.D. Cal. Sept. 29, 2009); *Ramirez v. Litton Loan Servicing, LP*, 2009 U.S. Dist. LEXIS 52484 (D. Ariz. June 22, 2009).

Here, a review of the Rudolphs' Complaint reveals that all of their claims relate – at least in part – to: (1) an alleged agreement by Defendant to provide a loan modification under the HAMP; and (2) Defendants' breach of an alleged agreement to modify the Rudolphs' mortgage loan pursuant to HAMP. (*See generally* Compl.)  Since there is no private right of action under HAMP, however, the Rudolphs' claims are subject to dismissal to the extent that they are based upon alleged violations of HAMP guidelines.  Moreover, the Rudolphs cannot disguise claims for violations of HAMP guidelines as tort and contract claims under state law.  *See, e.g.*, *Wigod v. Wells Fargo Bank, N.A.*, No. 10 CV 2348, 2011 U.S. Dist. LEXIS 7314 (N.D. Ill. Jan. 25, 2011); *Vida v. OneWest Bank, F.S.B.*, No. 10–987, 2010 U.S. Dist. LEXIS 132000 (D. Or. Dec. 13, 2010).  Accordingly, if the Court does not dismiss the Rudolphs' claims in their entirety, it should at least dismiss their claims to the extent that they relate to an alleged agreement to provide a loan modification under the HAMP.

I.     The Rudolphs are not entitled to injunctive relief.

The Rudolphs' request for injunctive relief should be dismissed because their request does not meet the heightened standard for issuing an injunction.  Recognizing that a preliminary injunction is an extraordinary and drastic remedy, the Eleventh Circuit requires a plaintiff seeking an injunction to establish each of the following prerequisites:

> (1) a substantial likelihood of success on the merits; (2) a substantial threat irreparable injury will occur absent issuance of the injunction; (3) the threatened injury outweighs the potential damage the requested injunction may cause the non-moving parties; and (4) the injunction would not be adverse to the public interest.

*Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002).

Here, the Court should deny the Rudolphs' injunction request.  Not only do the Rudolphs fail to make any showing that they are likely to succeed on the merits of any of their claims, but,

as discussed above, they have failed to state any claim upon which relief can be granted. Furthermore, the Rudolphs have failed to allege a substantial threat of irreparable injury or any facts showing that an injunction is in the public interest.  Defendants are entitled to enforce the terms of the note and mortgage – which expressly provided for the right to a "power of sale" in the event of the Rudolphs' default – and the Rudolphs do not deny that they defaulted under the terms of their mortgage loan.  (*See* Compl. ¶¶ 17, 21).  Accordingly, this Court should deny their request for injunctive relief.

## IV.    CONCLUSION

For the reasons set forth above, this Court should dismiss with prejudice all counts in Plaintiffs Steven Rudolph and Wendy Rudolphs' Complaint and award Defendants any further relief that the Court deems appropriate.

This the 3rd day of November, 2011.

/s/ *Timothy M. Davis*
Alan M. Warfield (WAR055)
Timothy M. Davis (DAV162)
Jones, Walker, Waechter, Poitevant,
    Carrère & Denègre, LLP
1819 5th Avenue North, Suite 1100
Post Office Box 830642
Birmingham, Alabama 35203
T: (205) 244–5200
F: (205) 244–5400
E: awarfield@joneswalker.com
    tdavis@joneswalker.com

*Attorneys for Defendants Bank of America, N.A., individually and as successor by merger to BAC Home Loans Servicing, LP, Mortgage Electronic Registration Systems, Inc., The Bank of New York Mellon Trust Company, N.A., CWABS, Inc., and Countrywide Home Loans, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of November, 2011, I filed the foregoing **MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW** with the Clerk of the Court using the CM/ECF system, which will email a copy to the following.

Jon E. Lewis, Esq.
Lewis, Feldman & Lehane, LLC
The Concord Center
2100 Third Avenue North, Suite 810
Birmingham, Alabama 35203


/s/ *Timothy M. Davis*
OF COUNSEL