FILED

2011 Nov-22  PM 03:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| STEVEN RUDOLPH, individually, and WENDY RUDOLPH, individually, | ) ) ) | |
| Plaintiffs, | ) ) ) | **Civil Action Number: 2:11-cv-03750-RDP** |
| v. | ) ) | |
| AMERICA'S WHOLESALE LENDER, a foreign entity; BANK OF AMERICA, National Association, a foreign corporation; BAC HOME LOAN SERVICING, LP, a Foreign limited partnership; RESERVE MORTGAGE INVESTMENTS, LLC, a Foreign limited liability company; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Foreign corporation; THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION, a foreign Corporation; CWABS, INC. ASSET-BACKED CERTIFICATES SERIES 2007-9, a foreign corporation; COUNTRYWIDE HOME LOANS, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## PLAINTIFFS' AMENDED COMPLAINT

Come now the Plaintiffs, Steven and Wendy Rudolph, and substitutes the Original

Complaint with the following:

## PARTIES

1.      Mr. and Mrs. Steven Rudolph are Alabama residents over the age of nineteen (19) and

residents of Bessemer, Alabama in Jefferson County, Alabama.

2.      Defendant America's Wholesale Lender ("AWL") is believed to be a trade name of

Countrywide Home Loans, Inc.

3.      Defendant Countrywide Home Loans, Inc. ("Countrywide") is a foreign corporation doing business in the State of Alabama.

4.      Defendant Bank of America, National Association. ("BOA") is a foreign corporation doing business in the State of Alabama.

5.      Defendant BAC Home Loan Servicing, LP ("BAC") is a foreign Limited Partnership doing business in the State of Alabama.

6.      Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a foreign corporation doing business in the State of Alabama.

7.      Defendant Reserve Mortgage Investments, L.L.C. ("Reserve") is a foreign Limited Liability Company doing business in the State of Alabama.

8.      Defendant The Bank of New York Mellon Trust Company, National Association ("Bank of NY") is a foreign corporation doing business in the State of Alabama and the trustee of CWABS.

9.      Defendant CWABS, Inc. Asset-Backed Certificates Series 2007-9 ("CWABS") is a foreign Corporation doing business in the State of Alabama.

## **FACTS**

10.      In May, 2007, Mr. and Mrs. Rudolph contacted Defendants Countrywide dba AWL regarding a mortgage to purchase their home located at 724 28th Court South, Bessemer, AL 35020-5233.

11.      Defendants Countrywide dba AWL entered into a note and mortgage with Mr. and Mrs. Rudolph with an interest rate of 11.900% interest rate (12.924% under the Truth In Lending Disclosure Statement) for a thirty (30) year mortgage with a base loan amount of $108,000.00 on a

$120,000.00 sales price for the home.

      12.    Mr. and Mrs. Rudolph's monthly payments on said note and mortgage were estimated to be approximately $1,182.83.

      13.    The type of loan is listed as a 2 year Hybrid Libor and Subprime.

      14.    Mrs. Rudolph was laid off from her employer so she and Mr. Rudolph decided to contact their loan servicer, Defendant BAC, a subsidiary of BOA, to let them know of their hardship and to determine whether or not they could obtain relief on their mortgage under the Home Affordable Modification Program ("HAMP") so that they could retain their home and avoid losing it through foreclosure.

      15.    At some point, the mortgage and note had been allegedly transferred to Bank of America whose employees began servicing the Rudolph's mortgage.

      16.    The Bank of America representative told Mr. and Mrs. Rudolph they would send them information and paperwork to fill out and return.

      17.    The Rudolphs filled out the paperwork and sent it in.

      18.    After that, the Rudolphs received a letter informing them of the new terms of their loan through the modification and that the new payment would be $868.27.

      19.    The Rudolphs accepted the modification and began making the modified payments.

      20.    After about six (6) payments of $868.27, the Rudolphs called Bank of America to see about getting a fixed interest rate.  Bank of America said that they would review this issue and not to make payments until the review was done.

      21.    The Rudolphs called Bank of America every two (2) weeks to see what the status was and the representative would tell them that the case was under review and said it was not in foreclosure, and that they could not receive payments while it was under review.

22.     Mr. Rudolph would call twice a month every month and get the same answer.

23.     Each time Mr. Rudolph called, he was told that they were looking into it and would get back with him.

24.     Bank of America's representatives also stated that they would send a Federal Express package with their new terms, but such a package was never sent.

25.     Finally, instead of notifying the Rudolphs regarding the fixed rate and their payments, Bank of America initiated foreclosure and sent the loan to an attorney who sent a letter to the Rudolphs informing them that they were foreclosing on their home.

## COUNT I

## NEGLIGENCE, WANTONNESS AND/OR WILLFULNESS

26.     Plaintiffs re-allege all prior paragraphs as if set out here in full.

27.     Plaintiffs claim Defendants owed Plaintiffs a duty of reasonable and ordinary care to ensure they had a right to foreclose on their property before initiating foreclosure proceedings.

28.     Defendants further owed a duty to Plaintiffs to ensure that Mr. and Mrs. Rudolph had not been compliant with the terms of the modification agreements they had entered into with Defendants before initiating foreclosure proceedings.

29.     Defendants negligently, wantonly, and/or willfully breached their respective duties to the Plaintiffs by initiating foreclosure on Mr. and Mrs. Rudolph's home when they knew, should have known, or could have known, with the exercise of reasonable care, that Mr. and Mrs. Rudolph had done everything requested of them in complying with the Home Loan Modification terms, and as a proximate consequence of Defendants' actions, Mr. and Mrs. Rudolph have been damaged by the Defendants, including, but not limited to, damage to their credit and mental and emotional distress.

30.     Further, the Defendants negligently, wantonly, and/or willfully failed to properly

follow the HAMP guidelines as set forth.

WHEREFORE, the above premises considered, the Plaintiffs hereby demand judgment against the Defendants for both compensatory and punitive damages in an amount to be deemed appropriate by a jury, and costs.

### COUNT II
### MISREPRESENTATION AND FRAUD

31.     Plaintiffs re-allege all prior paragraphs as if set out here in full.

32.     Defendants represented to Mr. and Mrs. Rudolph that they wanted to work with them to help them keep their home.

33.     Defendants represented to Mr. and Mrs. Rudolph, **in writing**, that they were approved for a modification under the Home Loan Modification program and the Homeowner Retention Program.

34.     Mr. and Mrs. Rudolph paid the modified payments, and Defendants accepted the modified payments for approximately six (6) months until the Rudolphs called the Defendants to see about a fixed rate of interest.

35.     Defendants represented to Mr. and Mrs. Rudolph that if they complied with the Home Loan Modification Program and their Homeowner Retention Program, they would modify their rate through a modification agreement, and Defendants told the Rudolphs that they could not accept payments while it was under review.

36.     Defendants continued to make said representations to the Rudolphs every two (2) weeks when Mr. Rudolph would call and speak to their representatives.

37.     The Defendants continued to represent to Mr. and Mrs. Rudolph every two (2) weeks that their loan modification was proceeding accordingly and that their home was not in

foreclosure.

38.     Defendants represented to Mr. and Mrs. Rudolph that they wanted to help them stay in their home and that they were committed to helping them stay in their home through the Home Loan Modification program and their Homeowner Retention Program.  At the same time, Defendants allegedly received insurance payments as a set off on the Rudolphs' home, and they have not disclosed the same to the Rudolphs.

39.     Said representations by Defendants were false, and they knew, should have known, or could have known, with the exercise of reasonable care, that they were false.

40.     Mr. and Mrs. Rudolph relied on said representations by providing Defendants with all of the documents Defendants requested and by making several payments promptly and by not attempting to take other action which might have prevented a foreclosure on their home and damaging their property and credit, and as a proximate consequence of Defendants' actions, Mr. and Mrs. Rudolph have been damaged by the Defendants, including, but not limited to, damage to their credit and mental and emotional distress.

WHEREFORE, the above premises considered, the Plaintiffs hereby demand judgment against the Defendant for both compensatory and punitive damages in an amount to be deemed appropriate by a jury, and costs.

## COUNT III
## OUTRAGEOUS MISCONDUCT

41.     Plaintiffs re-allege all prior paragraphs as if set out here in full.

42.     Mr. and Mrs. Rudolph complied with all of the Defendants' requests under HAMP.

43.     Notwithstanding the above and the fact that Defendants represented to Mr. and

Mrs. Rudolph that they wanted to help them stay in their home and avoid foreclosure, Defendants proceeded to foreclose on the Rudolphs' home with the knowledge that they had no right to do so and after representing to Plaintiffs that they were working on their modification and not to make payments during that time.

44.    Additionally, Defendants initiated the foreclosure process for the total outstanding balance of the Rudolphs' loan while Defendants allegedly received insurance payments as a set off on the Rudolphs' home and while Defendants knew or should have known that they did not have proper documentation to prove they actually owned the note and mortgage and had the right to foreclose on their home.

45.    Said conduct by Defendants shocks the conscience of reasonable individuals in our society, and as a proximate consequence of Defendants' actions, Mr. and Mrs. Rudolph have been damaged by the Defendants, including, but not limited to, damage to their credit and mental and emotional distress.

WHEREFORE, the above premises considered, the Plaintiffs hereby demand judgment against the Defendant for both compensatory and punitive damages in an amount to be deemed appropriate by a jury, and costs.

## COUNT IV
## VIOLATIONS OF RESPA AND HAMP

46.    Plaintiffs re-allege all prior paragraphs as if set out here in full.

47.    Defendants violated the Home Affordable Modification Program and the Real Estate Settlement and Procedures Act by initiating foreclosure proceedings on a home in which they had agreed to modify the loan.

48.    Defendants did not properly assign Mr. and Mrs. Rudolph's mortgage when it was

transferred to MERS, and MERS has not properly followed procedures to make sure that the actual owner of the Plaintiffs' note is the proper owner.  In fact, Plaintiffs allege that Defendants have not followed the procedures set forth by the Pooling and Servicing Agreement which enabled Defendants to securitize this loan.

49.     Any assignments by and between Defendants have not been properly recorded.

50.     There have been numerous questions nationally about the fraudulent notarization of various assignment documents, and Plaintiffs demand strict proof from the Defendants that said assignments and notaries were proper.  Without such proof and testimony, Plaintiffs, nor this Honorable Court, can be assured that the foreclosure of Plaintiffs' home is proper and legal.

51.     Defendants initiated foreclosure proceedings while Mr. and Mrs. Rudolph were complying with the Home Affordable Modification Program and with the Homeowner Retention Program in violation of the Home Affordable Modification Program.

52.     Plaintiffs further contend Defendants cannot prove they actually own the note, and therefore, Defendants have no authority to foreclose on Plaintiffs' property, and the foreclosure is invalid and void on its face.

53.     Additionally, Plaintiffs sent a Qualified Written Request under RESPA to Defendants on or about August 24, 2011, and Defendants have failed and/or refused to respond to the same as of the date of this Complaint.

54.     As a proximate consequence of Defendants' actions, Mr. and Mrs. Rudolph have been damaged by the Defendants, including, but not limited to, damage to their credit and mental and emotional distress.

WHEREFORE, the above premises considered, the Plaintiffs hereby demand judgment against the Defendant for rescission of the foreclosure, reinstatement of the mortgage, both

compensatory and punitive damages in an amount to be deemed appropriate by a jury, a reasonable attorneys fee and costs.  In addition, Plaintiffs request that said damages be trebled pursuant to the appropriate statutes.

## COUNT V
## BREACH OF CONTRACT

55.     Plaintiffs re-allege all prior paragraphs as if set out here in full.

56.     Defendants offered Mr. and Mrs. Rudolph a loan modification, **in writing**, which they accepted, **in writing**.

57.     Mr. and Mrs. Rudolph made payments under said loan modification, and after making approximately six (6) payments, the Rudolphs requested a fixed rate.

58.     At the time of said request, Defendants told Plaintiffs that they could not except any more payments while the loan was under review but that there would be no foreclosure during that time.

59.     Defendants breached said agreement by foreclosing on the Rudolphs' home while Defendants had agreed to modify the loan and accept Mr. and Mrs. Rudolphs' payments.

60.     As a proximate consequence of Defendants' actions, Mr. and Mrs. Rudolph have been damaged by the Defendants, including, but not limited to, damage to their credit and mental and emotional distress.

WHEREFORE, the above premises considered, the Plaintiffs hereby demand judgment against the Defendant for compensatory damages in an amount to be deemed appropriate by a jury, and costs.

## COUNT VI
## INJUNCTIVE RELIEF

61.     Plaintiffs re-allege all prior paragraphs as if set out here in full.

62.     Defendants are attempting to foreclose on Mr. and Mrs. Rudolph's home.

63.     Defendants have absolutely no right to foreclose on Mr. and Mrs. Rudolph's home

because:

(1)     They instructed Mr. and Mrs. Rudolph that they could not accept

payments;

(2)     They agreed to modify Mr. and Mrs. Rudolphs' loan;

(3)     They have not proven who actually owns the note and mortgage so that a

proper foreclosure can be conducted;

(4)     They have allegedly already received insurance payments which would

offset any amount owed by Mr. and Mrs. Rudolph; and

(5)     They are attempting to foreclose on Mr. and Mrs. Rudolph's home with

unclean hands.

64.     As a result, Mr. and Mrs. Rudolph are asking this Honorable Court to enter a

temporary and permanent injunction to enjoin Defendants from foreclosing on said home and to

enjoin Defendants from taking any further action on the Rudolphs' home until this mess can be

resolved.

65.     In addition, Mr. and Mrs. Rudolph are requesting this Honorable Court to Order

Defendants to reinstate the loan modification Mr. and Mrs. Rudolph had agreed to so that they

can remain in their home.

66.     Mr. and Mrs. Rudolph are further requesting this Honorable Court to enter an Order awarding damages to Mr. and Mrs. Rudolph which the Court deems are just in light of the emotional trauma suffered by Mr. and Mrs. Rudolph as a result of Defendants' actions in addition to attorney's fees and costs.

WHEREFORE, the above premises considered, the Plaintiffs hereby demand judgment against the Defendant for rescission of the foreclosure, reinstatement of the mortgage, both compensatory and punitive damages in an amount to be deemed appropriate by a jury, a reasonable attorneys fee and costs.

/s/ Jon E. Lewis
JON E. LEWIS (LEW033)
Attorney for the Plaintiffs

**OF COUNSEL:**

LEWIS, FELDMAN & LEHANE, LLC
The Concord Center
2100 Third Avenue North, Suite 810
Birmingham, Alabama 35203
(205)254-3927 telephone
(205)254-3939 facsimile
jon@lewis-attorneys.com

**Plaintiffs demand a trial by a struck jury in this cause.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served electronically on the following, to wit:

Alan M. Warfield, Esq.
Timothy M. Davis, Esq.
Jones, Walker, Waechter, Poitevant, Carrére & Denégre, LLP
1819 5th Avenue North, Ste. 1100
P.O. Box 830642
Birmingham, AL 35203

/s/ Jon E. Lewis
JON E. LEWIS (LEW033)
Attorney for the Plaintiffs